**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

---

IRAN AMANDAH,

Plaintiff,

v. Case No.: 26-cv-2043

CAMPERS INN RV OF RICHFIELD INC.,

Defendant.

---

## COMPLAINT

---

The Plaintiff, Iran Amandah, alleges through his undersigned counsel, as follows:

## NATURE OF CASE

1. Plaintiff, Iran Amandah, a Black man and a member of The Church of Jesus Christ of Latter-day Saints, sues his former employer under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981 ("Section 1981"), because Defendant demoted him from General Manager of its Richfield, Wisconsin store, and denied him the training and support it gave his White, non-Mormon predecessors and successor, because of his race and religion.

2. Defendant demoted Amandah within days of learning that he is Mormon, roughly one month after he led the Richfield store to the best first quarter

in its history as a Campers Inn location, without a single disciplinary action, performance improvement plan, or unfavorable performance evaluation, while White, non-Mormon General Managers who performed worse kept their jobs.

## JURISDICTION AND VENUE

3. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, because Plaintiff's claims arise under the laws of the United States, and by 28 U.S.C. § 1343(a)(4), because Plaintiff seeks relief under Acts of Congress providing for the protection of civil rights.

4. Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), because the unlawful employment practices alleged herein were committed in this District, the employment records relevant to those practices are maintained and administered in part in this District, and Plaintiff would have continued working in this District but for those practices. Defendant's Richfield, Wisconsin store is located in Washington County, Wisconsin, within the Milwaukee Division of this District.

## CONDITIONS PRECEDENT

5. On or about February 9, 2026, within 300 days of the unlawful employment practices alleged herein, Amandah filed a timely charge of discrimination based on race and religion with the Equal Employment Opportunity Commission ("EEOC"), which was assigned EEOC Charge No. 443-2026-00604.

6. On or about August 5, 2026, the EEOC issued Amandah a Notice of Right to Sue on that charge. Amandah commenced this action within ninety (90) days of his receipt of that Notice.

7. All conditions precedent to this action, within the meaning of Rule 9(c), Fed. R. Civ. P., have been performed or have occurred.

**JURY DEMAND**

8. Plaintiff demands that this case be tried before a jury of his peers.

**PARTIES**

9. Plaintiff, Iran Amandah, is an adult resident of the City of Brookfield, Waukesha County, Wisconsin. Amandah is Black and is a member of The Church of Jesus Christ of Latter-day Saints.

10. At all times relevant, Amandah was an employee of Defendant within the meaning of 42 U.S.C. § 2000e(f), and was a party to a contract of employment with Defendant within the meaning of 42 U.S.C. § 1981.

11. Defendant, Campers Inn RV of Richfield Inc., is a State of Wisconsin corporation that owns and operates RV dealerships in more than forty locations throughout the United States, including the dealership known as Campers Inn RV of Richfield, located at 3284 Pioneer Rd, Richfield, WI 53076.

12. At all times relevant, Campers Inn was an employer within the meaning of 42 U.S.C. § 2000e(b), engaged in an industry affecting commerce and employing fifteen or more employees for each working day in twenty or more calendar weeks in the current or preceding calendar year.

## OPERATIVE FACTS

13. Campers Inn describes itself as the nation's largest family-operated RV dealer. Its leadership includes Chief Operating Officer Ben Hirsch.

14. Campers Inn acquired the Richfield, Wisconsin dealership in or about 2021.

15. On or about November 15, 2023, Campers Inn hired Amandah as a Finance and Insurance ("F&I") Business Manager at its Richfield store.

16. Amandah holds bachelor's and master's degrees in investment finance, and before joining Campers Inn he owned and operated small businesses and worked as an investment analyst and manager.

17. At all relevant times, Amandah reported to Larry Peter, Campers Inn's National Director of Store Operations.

18. Amandah performed well as an F&I Business Manager, and effective September 1, 2024, Campers Inn promoted him to Sales Manager of the Richfield store.

19. In or about July 2024, the Richfield store's General Manager, Dominic Gibbons, who is White and not Mormon, resigned. The store's administrator/title clerk and its service manager also resigned around that time, meaning the store was without a General Manager, service manager, administrator, or receptionist.

20. Amandah stepped in to stabilize the store, working six days a week through the summer and fall of 2024 and performing the duties of finance manager, sales manager, general manager, and administrator.

21. In his year-end 2024 performance evaluation of Amandah, Peter wrote: “Iran, thank you for jumping in with both feet, doing a great job leading from the front and taking ownership and accountability, and beginning to get the ship stabilized,” and noted that the store “seems to have made significant strides in getting organized and the culture stabilized.”

22. Effective January 1, 2025, Campers Inn promoted Amandah to General Manager of the Richfield store. Amandah was the first Black General Manager of the Richfield store.

23. Amandah did not receive the same training as his predecessors in the General Manager position, who were white and not Mormon.

24. Corporate budgets assigned to the Richfield store reflected a declining market. The store sold approximately 275 units in 2023 and approximately 202 units in 2024, and Campers Inn’s own corporate strategy materials for 2024 and 2025 described the Richfield location as being in “survival” mode. Campers Inn nonetheless set a 2025 goal of 282 units for the store, approximately 40 percent above the prior year’s actual sales.

25. In his first quarter as General Manager (January through March 2025), Amandah met the Richfield store’s aggressive quarterly unit sales budget, delivering 62 units against a quarterly goal of 62 units.

26. In the first quarter of 2025, the Richfield store sold more units and generated more profit than in any first quarter since Campers Inn acquired the store, setting a first-quarter record for the location. Amandah accomplished this without a Sales Manager.

27. The Richfield store's first-quarter results include the annual Milwaukee RV Show every year. The 2025 Milwaukee RV Show delivered fewer units than the 2023 and 2024 shows, yet the store's first-quarter 2025 unit volume exceeded that of prior years.

28. In the spring of 2025, RV sales declined industry-wide and across Campers Inn, in part because of economic uncertainty surrounding tariffs. Campers Inn ownership and corporate management acknowledged the declining market during regional Teams meetings in April and May 2025.

29. Despite the declining market, the Richfield store's combined first- and second-quarter 2025 profits exceeded those of the first two quarters of 2024 and were on par with those of the first two quarters of 2023.

30. During Amandah's tenure as General Manager, the Richfield store ranked third among Campers Inn's more than forty locations in used RV gross margins and twelfth in new RV gross margins, and earned the fourth highest market share of all Campers Inn locations.

31. Campers Inn's own market-share reports show that, for January through June 2025, the Richfield store increased its share of its local market from 12.50 percent to 16.25 percent compared with the prior year, while competing dealers lost share, and that the store's market share for the second quarter of 2025 increased by more than 600 percent over the second quarter of 2024.

32. Campers Inn paid Amandah a $5,000 bonus for the Richfield store's market-share gains in the first and second quarters of 2025, $2,500 for each quarter.

33. Campers Inn evaluates its managers through quarterly performance evaluations conducted in its "JobTrack" system, and its practice and policy is that a promotion or demotion is preceded by a corresponding favorable or unfavorable quarterly evaluation.

34. Campers Inn also maintains a "Growth Action Plan" ("GAP Plan") process for employees whose performance is unfavorable, consistent with its professed practice of "coaching employees up, before coaching them out," and a practice of progressive discipline.

35. In or about late April 2025, Peter completed Amandah's first-quarter 2025 General Manager evaluation. That evaluation was favorable overall and made no reference to personnel issues at the Richfield store.

36. Campers Inn never conducted a second-quarter 2025 evaluation of Amandah.

37. During his tenure as General Manager, Amandah never received a disciplinary action, was never placed on a GAP Plan, and never received an unfavorable quarterly evaluation.

38. Before May 2025, neither Peter nor Hirsch had ever spoken with Amandah about unfavorable performance or dissatisfaction with the Richfield store.

39. Like other Campers Inn locations, the Richfield store experienced ordinary personnel issues. Amandah regularly sought and followed the guidance of Campers Inn's Human Resources department in addressing them, including by issuing progressive discipline as Human Resources directed.

40. The employees involved in the personnel issues at the Richfield store in early 2025 were not hired by Amandah. They were hired by Amandah's former Market Manager or by regional directors before Amandah became General Manager.

41. One of those employees, F&I Business Manager Jacob Lange, had a history of behavioral problems, including reported vaping in his office, reported drug use at work, offensive language, and repeated "no-shows." On April 28, 2025, Amandah met with Lange about a no-show on April 26 and told him that, absent a renewed commitment, his employment would end.

42. On or about April 30 and May 1, 2025, facing imminent termination, Lange submitted a resignation letter to Campers Inn management making accusations against Amandah, including that Amandah was gambling and drinking with team members. Campers Inn has admitted that those accusations were unfounded.

43. In responding to Lange's accusations in early May 2025, Amandah told Peter that he does not drink or gamble because he is Mormon.

44. On May 6, 2025, Amandah sent an email to Hirsch and Peter, copying regional and human resources personnel, responding to Lange's accusations and stating, among other things, that he does not drink.

45. On May 12, 2025, Hirsch emailed Amandah, demanded "a direct answer" to whether Amandah was "gambling or drinking with subordinates," and stated that the store's performance and personnel were Amandah's

responsibility. This email was the first time Hirsch had ever communicated directly with Amandah about any concern regarding the Richfield store.

46. On May 13, 2025, Amandah responded in writing, denied Lange's accusations, and laid out a detailed action plan to increase sales volume. No one from Campers Inn responded to identify any deficiency in that plan.

47. The Richfield store's May 2025 sales exceeded its April 2025 sales by approximately 50 percent.

48. On or about June 18, 2025, while Amandah was on a four-day family vacation, he learned from one of his subordinates, salesperson Chris Albert, who is White, that he was going to be demoted. Albert had been told by Campers Inn's Regional Sales Director, Josh Smith, who is White.

49. Amandah texted Peter to ask whether the information was true. During a telephone call on or about June 19, 2025, Peter confirmed that Campers Inn was removing Amandah as General Manager and returning him to the F&I Business Manager position.

50. During that call, Peter, unprompted, told Amandah that the demotion "had nothing to do with [you] being Mormon or Jacob's letter."

51. Peter offered Amandah no performance-based reason for the demotion, instead describing it vaguely as a "corporate shuffle." Peter did not mention personnel issues.

52. Effective on or about July 2, 2025, Campers Inn demoted Amandah from General Manager to F&I Business Manager, and replaced him with Kevin Maulson, who is White and not Mormon.

53. The demotion reduced Amandah's pay, benefits, title, authority, and opportunities for advancement.

54. Campers Inn did not give Amandah a disciplinary action, a GAP Plan, an unfavorable quarterly evaluation, or any other progressive step before demoting him, contrary to its practices and policies.

55. Campers Inn did not ask Amandah about his race or religion, but its decision makers knew he is Black, and Peter knew by early May 2025 that Amandah is Mormon.

56. Gibbons, Amandah's White, non-Mormon predecessor as General Manager of the Richfield store, delivered 49 units against a goal of 65 in his first quarter as General Manager (January through March 2024). Campers Inn did not demote him.

57. Maulson, Amandah's White, non-Mormon successor, delivered 21 units against a goal of 32 in July 2025 and 14 units against a goal of 35 in August 2025, and delivered 54 units against a goal of 79 in his first quarter as General Manager (July through September 2025). Campers Inn did not demote him.

58. Josh Smith, who is White and not Mormon and who served as General Manager of the Richfield store in 2023, was promoted to Regional Sales Director.

59. Other White, non-Mormon General Managers in Amandah's region operated stores that were among Campers Inn's worst performing in the country, and Campers Inn did not demote them.

60. Campers Inn sent Smith and Gibbons to a week-long sales training program with Sobel University in Seattle, at company expense. Campers Inn did not give Amandah that opportunity or any similar opportunity.

61. Campers Inn sent Smith, Gibbons, and Maulson to a three-day "GM Training" at its corporate headquarters, at company expense. Campers Inn did not give Amandah that opportunity or any similar opportunity.

62. Before Maulson took over the Richfield store, Campers Inn sent him, at company expense, to other Campers Inn locations to shadow their General Managers and learn best practices. Campers Inn never gave Amandah that opportunity or any similar opportunity, before or during his tenure as General Manager.

63. In September 2025, Ben Hirsch spent two days with Maulson at the annual Forest River RV Expo in Indiana, at company expense. Ben Hirsch never offered Amandah any comparable opportunity and, apart from his May 12, 2025 email, never engaged Amandah in direct conversation during his tenure as General Manager.

64. During Amandah's employment, Campers Inn employed few or no Black or Mormon employees in its Finance Manager, General Manager, Regional Director, National Director, or executive positions.

65. After Amandah complained internally of discrimination, and in its position statement to the EEOC, Campers Inn asserted for the first time that it demoted Amandah because of financial underperformance and personnel issues at the Richfield store.

66. Campers Inn's explanation is false and is a pretext for discrimination. Among other things, it is contradicted by the store's record first quarter, its market-share gains, the bonus Campers Inn paid Amandah for those gains, Amandah's favorable first-quarter evaluation, the absence of any discipline, GAP Plan, or unfavorable evaluation, Peter's failure to mention any such reasons when he informed Amandah of the demotion, and Campers Inn's retention of White, non-Mormon General Managers who performed worse.

67. Campers Inn's attribution of the store's record first quarter to the Milwaukee RV Show, which the store attends every year and which delivered fewer units in 2025 than in prior years, is likewise pretextual.

68. Amandah remained in the F&I Business Manager position until December 19, 2025, when he resigned.

69. As a direct result of Campers Inn's conduct, Amandah has suffered lost wages and benefits, lost career opportunities, and emotional distress, humiliation, and damage to his professional reputation.

70. Campers Inn acted with malice or with reckless indifference to Amandah's federally protected rights.

**FIRST COUNT**
**RACE DISCRIMINATION**
**42 U.S.C. § 2000e-2(a)(1)**

71. As and for a first Count, Amandah reasserts the allegations recited above and fully incorporates those paragraphs herein by reference.

72. Campers Inn discriminated against Amandah with respect to his compensation, terms, conditions, and privileges of employment because of his race, including by demoting him from General Manager and by denying him training and support it gave White General Managers, in violation of 42 U.S.C. § 2000e-2(a)(1).

73. Amandah's race was a motivating factor in Campers Inn's decisions, within the meaning of 42 U.S.C. § 2000e-2(m).

**SECOND COUNT**
**RELIGIOUS DISCRIMINATION**
**42 U.S.C. § 2000e-2(a)(1)**

74. As and for a second Count, Amandah reasserts the allegations recited above and fully incorporates those paragraphs herein by reference.

75. Campers Inn discriminated against Amandah with respect to his compensation, terms, conditions, and privileges of employment because of his religion, including by demoting him from General Manager within weeks of learning that he is Mormon, in violation of 42 U.S.C. § 2000e-2(a)(1).

76. Amandah's religion was a motivating factor in Campers Inn's decisions, within the meaning of 42 U.S.C. § 2000e-2(m).

**THIRD COUNT**
**RACE DISCRIMINATION**
**42 U.S.C. § 1981**

77. As and for a third Count, Amandah reasserts the allegations recited above and fully incorporates those paragraphs herein by reference.

78. Campers Inn intentionally discriminated against Amandah because of his race in the making, performance, modification, and termination of his employment contract, and in the enjoyment of all benefits, privileges, terms, and conditions of that contractual relationship, including by demoting him and denying him training and support it gave White General Managers, in violation of 42 U.S.C. § 1981.

79. But for Amandah's race, Campers Inn would not have demoted him or denied him that training and support.

WHEREFORE Plaintiff, Iran Amandah, demands relief as follows:

A. Judgment in his favor on each Count of this Complaint;

B. Back pay and lost benefits, with prejudgment interest;

C. Reinstatement to the position of General Manager or, in the alternative, front pay in lieu of reinstatement;

D. Compensatory damages for emotional distress, humiliation, and damage to reputation, under 42 U.S.C. § 1981a and 42 U.S.C. § 1981;

E. Punitive damages under 42 U.S.C. § 1981a(b)(1) and 42 U.S.C. § 1981;

F. Reasonable attorney's fees, expert fees, and costs under 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988;

G. Post-judgment interest; and

H. Such other relief as the Court deems just and equitable.

Dated this 2nd day of November, 2026.

*Electronically signed by Nicholas O. Yurk*

Nicolas O. Yurk, Bar No. 1095278
Alan C. Olson, Bar No.: 1008953
Attorneys for Plaintiff
Alan C. Olson & Associates, S.C.
2880 S. Moorland Rd.
New Berlin, WI  53151
Telephone: (262) 785-9606
Fax: (262) 785-1324
Email: NYurk@Employee-Advocates.com
Email: AOlson@Employee-Advocates.com